NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0006n.06

No. 10-1785

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 05, 2012**

LEONARD GREEN, Clerk

TERRENCE V. WILLIAMS

  *Petitioner-Appellee,*

v.

RAYMOND BOOKER, Warden

  *Respondent-Appellant.*

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:  DAUGHTREY, COLE, and ROGERS, Circuit Judges.

COLE, Circuit Judge. Defendant-Appellee Terrence Williams, a Michigan state prisoner, successfully petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. Williams's petition alleged ineffective assistance of trial counsel based on his attorney's failure to communicate a favorable plea agreement to him. Because this claim was procedurally defaulted and because Williams cannot establish cause to surmount this procedural roadblock, we REVERSE the district court's grant of the writ.

## I. BACKGROUND

In October 2002, a Saginaw County jury convicted Williams of conspiring to commit first-degree murder, being a felon in possession of a firearm, and two counts of possessing a firearm during the commission of a felony. These convictions arose from the shooting of Frederic Stewart, who was shot four times while sitting in a parked vehicle in his driveway and sustained multiple injuries. *People v. Williams*, 2004 WL 1459559, at * 1-2 (Mich. App. June 29, 2004). Williams was

tried with three co-defendants, and was sentenced to concurrent terms of two years in prison for each felony firearm conviction, followed by life imprisonment for the conspiracy conviction, and a concurrent term of forty-two to ninety-two months for the felon in possession conviction.

Following these convictions, Williams appealed to the Michigan Court of Appeals, raising six claims, including challenges to the sufficiency of the evidence, the denial of a directed verdict, the jury instructions, the validity of the verdict, and the denial of a mistrial. *Id.* at 1-6. The appellate court affirmed the convictions and sentences, *id.* at 6, and the Michigan Supreme Court denied leave to appeal. *People v. Williams*, 690 N.W.2d 118 (Mich. 2004).

Some five years after his trial in state court, Williams filed a post-conviction petition raising an ineffective assistance of counsel claim based on his claim that his trial attorney unilaterally rejected a favorable plea agreement offer and failed to promptly inform him of the proposed agreement. Because Michigan law required this claim to be first raised on direct appeal and Williams failed to do so, the court on collateral review deemed it procedurally defaulted. That court also found Williams unable to demonstrate good cause to overcome this procedural default and denied his motion for relief from judgment. The Michigan Court of Appeals affirmed this decision and the Michigan Supreme Court denied Williams's leave to appeal, both courts finding Williams unable to meet his burden of establishing good cause to forgive the procedural default. *See People v. Williams*, 725 N.W.2d 670 (Mich. 2007).

After exhausting all direct and collateral appeals, Williams filed a petition for writ of habeas corpus in the Eastern District of Michigan under 28 U.S.C. § 2254. As one basis for relief, Williams advanced his ineffective assistance of trial counsel claim. This claim presupposed the existence of

a plea agreement offer, a fact the Warden heavily contested. Because the issue was in great dispute, the district court held three evidentiary hearings and heard testimony from Williams, the trial attorney, the prosecutor, the appellate counsel, and Williams's stepfather. The district court sought to establish whether a plea agreement offer was ever extended and, if so, whether Williams's trial counsel unilaterally rejected it.

Williams's trial lawyer, James Gust, testified that on the first day of trial, just before voir dire, "all the defendants and the defense attorneys were in a jury room" together to discuss the plea offer. Gust's memory was admittedly hazy, but he testified that, under the terms of the proposed agreement, Williams would have received roughly five years' imprisonment, though all of the co-defendants would have had to accept the plea offer. Gust remembered discussing the offer with Williams and his stepfather, Reginald Smith, and testified that Williams was opposed to accepting the agreement. Smith later testified that he never discussed a plea agreement with Gust.

The prosecutor, Steven Fenner, testified that he was unaware of any proposed plea agreement. Fenner had no recollection of extending an offer, could not find any mention of an offer in the case file, and found it inconceivable that he would have offered such a favorable plea agreement in a conspiracy to commit first-degree murder case. He also testified that he had no knowledge of a pre-voir dire meeting in the jury room, but he found it "very unusual" that the court would permit defendants to meet there due to security concerns. As the trial attorney, Fenner did not handle the preliminary stages of the case, but he testified that he had no knowledge of a predecessor offering a plea agreement.

Williams denied the existence of a pre-voir dire meeting with all the defendants and their counsel and testified, rather, that his attorney first apprised him of the plea offer immediately following the victim's testimony. According to Williams, Gust informed him that the prosecution extended an offer to plead guilty to both the possession of a firearm during the commission of a felony and the felon in possession charges, but that Gust had already rejected the offer.

Vincent Green, Williams's appellate counsel during the direct appeal to the Michigan Court of Appeals, testified that he filed an appellate brief, raising six trial court errors. Although Green's memory was hazy, he recalled visiting Williams twice as well as talking to him on the phone, and testified that Williams never informed him of the plea agreement Gust rejected. He further testified that, at the time of Williams's appeal, he had handled only a small number of criminal appeals and likely had his law clerk draft the brief.

Relying essentially on only the testimony of Williams, most of it self-serving, the district court determined that a plea offer was extended, that Williams's trial counsel failed to inform him of it, and that counsel unilaterally rejected the offer. In its May 28, 2010 opinion and order, the district court found that the trial counsel's actions amounted to ineffective assistance of counsel and conditionally granted the writ of habeas corpus. *Williams v. Booker*, 715 F. Supp. 2d 756 (E.D. Mich. 2010). The district court found that even though the claim was procedurally defaulted due to Williams's failure to raise it on direct appeal, Williams was able to satisfy the cause and prejudice standard to overcome the default because he received ineffective assistance of appellate counsel in not timely raising the issue. *Id.* at 762-65. The state filed an appeal, and the district court released Williams on bond pending appeal.

## II.  ANALYSIS

This Court reviews a district court's legal conclusions, including its ultimate decision to grant or deny the writ, de novo.  *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006).  Because "[c]laims of ineffective assistance of counsel are mixed questions of law and fact[, this Court] review[s] such claims *de novo*."  *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999).  As Williams filed his habeas petition in May 2007, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our review of his claims.  Under AEDPA, we may grant the writ only if the state court judgment is contrary to or involves an unreasonable application of clearly established law or "was based on an unreasonable determination of the facts in light of the evidence . . . ."  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362 (2000).

A federal court, generally, may not consider a procedurally defaulted claim on habeas review. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977)).  A claim is procedurally defaulted when:  "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

Neither party disputes that the district court properly deemed the ineffective assistance of trial counsel claim procedurally defaulted.  Rather, the issue lies in whether this procedural default should be excused, which is permitted only in the narrow set of circumstances "in which a state prisoner has defaulted his federal claims in state court . . . [yet] the prisoner can demonstrate cause for the default

and actual prejudice . . . ." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This Court may not review the merits of Williams's ineffective assistance of trial counsel claim unless he satisfies this cause and prejudice standard.

To satisfy this burden, Williams cites the ineffective assistance of his appellate counsel, arguing that his appellate attorney fell below the standards of reasonableness in not raising the claim on direct appeal. Ineffective assistance of appellate counsel may establish cause, but any "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prove cause, the defendant must satisfy the high standard of proving both that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although *Strickland* concerned ineffective assistance of trial counsel, this same standard applies to ineffective assistance of appellate counsel claims. *See Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009); *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 433 (6th Cir. 2006).

The district court determined that Williams established cause to overcome the procedural default because his appellate attorney provided representation that amounted to ineffective assistance of counsel under *Strickland*. In evaluating whether Green's assistance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, the district court emphasized Green's inexperience with criminal appeals, his decision to visit Williams only twice, and the substantial assistance Green received from his young law clerk in drafting the brief. *Williams*, 715 F. Supp. 2d at 763-66. The district court stressed the relevance of Green's failure to ask about the existence of

a plea agreement, proposing that "[a] reasonable appellate attorney would have asked Petitioner whether there was a plea offer, whereas Petitioner's appellate counsel failed to make that inquiry. A reasonable and competent attorney also would have consulted with Petitioner and his trial attorney about issues to be raised on appeal *before* filing the appellate brief." *Williams*, 715 F. Supp. 2d at 764. The district court viewed Green's failure to specifically ask Williams whether he ever received a plea agreement tantamount to neglecting the duty to investigate, but cited no authority for this proposition.

Not all attorney error amounts to ineffective assistance of counsel. "In determining whether counsel made serious errors, the standard to which an attorney is held is not that of the most astute counsel, but rather that of 'reasonably effective assistance.'" *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 687). *Strickland* does not demand perfection from attorneys. *See Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001) ("The question, of course, is not whether counsel was topnotch, but whether he or she functioned at the level required by the Sixth Amendment . . . ."). Therefore, we "will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *O'Hara*, 24 F.3d at 828 (quoting *Strickland*, 466 U.S. at 689).

We cannot say that Green's service fell below a level of "reasonably effective assistance." *See id.* Although ideally an appellate attorney would have explicitly asked Williams whether he received a plea offer at any time, there was a dearth of information in the record to alert Green to the possibility that a plea offer had been extended. Both Gust and Fenner testified that there was no mention of a plea offer in their case files or on the record, even though in their experience it is the

typical practice to place such an offer on the record.  Furthermore, Williams never mentioned the agreement to Green, leaving Green without any reason to believe trial counsel had unilaterally rejected a plea agreement.  Attorneys have a duty to investigate, but it is a "duty to make *reasonable* investigations."  *Strickland*, 466 U.S. at 690-91 (emphasis added).  We cannot find that Green's assistance fell below an objectively reasonable standard because he failed to investigate a possible claim wholly unsupported by the record.  Because Green's deficiencies do not satisfy the *Strickland* standard, the district court erred in permitting Williams to rely on an ineffective assistance of appellate counsel claim to overcome the procedural default.  Williams is unable to surmount the procedural default hurdle; therefore, the district court erred in reaching the merits of his petition, as they were not properly before the court.  *See Seymour*, 224 F.3d 542.

### III.  CONCLUSION

The district court's grant of the writ of habeas corpus is REVERSED.